WRIGHT, &c.
vs.
ARNOLD, &c.

CHANCERY

Case 36.

## Wright vs. Arnold, &c.
## Herring vs. Same.
## Herring vs. Same.

ERROR TO GARRARD CIRCUIT.

1. A transfer by the husband of the choses in action belonging to the wife, which he has a right to reduce into immediate possession, will deprive her of her right of survivorship, but not of her equity to a settlement.

2. If the wife be present and make no objection to the sale of her interest in her father's estate by her husband, she cannot afterwards come into a court of equity and demand a settlement out of the estate. (Davis v. Tingle, 8 B. Monroe, 43; 1 Story's Eq., 377; Gilbert v. Carlan, manuscript opinion of Summer term, 1854.

3. This case is not analogous to the case of Hord v. Hord, 5 B. Monroe, 81, which was a case of the mortgage by husband and wife of the reversionary interest of the wife to secure a pre-existing debt of the husband, in which case the chancellor refused to aid the mortgagee to the prejudice of the wife's right to a settlement.

4. The fact that a wife stands by and permits her husband to sell her interest in her father's estate, to which he has the immediate right of possession, is sufficient to repel her equity to a right to a settlement out of the estate against the purchaser.

5. An administrator purchased from one of the distributees an interest in the estate, very soon after he arrived of full age, for a consideration grossly inadequate. Held, that the contract was not binding on the distributee, but fraudulent. The chancellor dis-

regards such contracts made with wards and distributees, by guardians and administrators.

6. A *feme covert* may sue in her own name for a settlement. *Moore v. Moore, ante* 259.

WRIGHT, &c.
*vs.*
ARNOLD, &c.

George Herring died intestate, leaving an estate consisting almost entirely of slaves. Arnold was appointed his administrator, and also the guardian of his children. These suits are brought against Arnold, by three of the distributees, for their distributable part of the estate in his hands.

Case stated.

To the suit of Mrs. Wright the defense relied on is, that her husband, with her knowlege and consent, sold her interest in the estate in her presence to Tapp, who afterwards sold it to the defendant Arnold; her right to sue in her own name without joining her husband is controverted.

John A. Herring had been of age two or three years before he sold his interest to Arnold. David A. Herring had been of age a very short time before he sold. They each claim a greater interest in the estate than they received, and that these sales may be regarded as void for fraud on the part of Arnold. The bills were dismissed by the circuit judge, and they prosecuted writs of error.

A. A. BURTON, for plaintiffs—

1. Arnold is a trustee for plaintiffs by virtue of his office of guardian, and trustees cannot deal with their *cestui que trusts*—4 *Kent's Com.*, 439; *Adams' Eq.*, 60; and a guardian purchasing in the expectancy of his ward, so soon after his attaining full age, is presumed to do it fraudulently, and he takes nothing to himself, but still holds the estate in trust for his ward. The purchase is *per se* fraudulent and invalid—*Leading cases in Equity*, 410; 3 *Marshall*, 479; *Story's Eq.*, section 317, *page* 20.

2. The ward need not show the transaction fraudulent in fact—he has a right to have it set aside at his election. *Newland on Contracts*, 448; *Goldsmith's Eq.*, 28; *Batten on Contracts*, 28; *Story's Eq.*, sections 311, and 322.

WRIGHT, &c.
vs.
ARNOLD, &c.

3. As to the right of a *feme covert* to come into equity for a settlement, that question, since the decision of the circuit judge, has been decided in the affirmative by this court in the case of *Moore v. Moore, ante,* 259.

4. Mrs. Wright's equity overreaches the bill of the alienee of her husband; she did not join in the sale; was a minor at the time; the property had not been reduced by the husband to his possession; and he has made no provision for a settlement upon her. She has a prior equity, coupled with the legal title, to that of the alienee of the husband—*Estham v. Wells,* 7 *Dana,* 430; *Turner v. Davis' adm'r.,* 1 *B. Monroe,* 151, 152; *Kennedy v. Thomas,* 4 *B. Monroe,* 236–7; *Hord v. Hord,* 5 *B. Monroe,* 81; *Bell on husband and wife,* 131–134.

In the case of *Hord v. Hord* the wife had joined with her husband in a conveyance of a revisionary interest in slaves, which had not been reduced to her possession, or that of the husband—at her instance they were settled on her.

The right of Arnold to credit for what has been received by D. A. and J. A. Herring is not controverted, but it is denied that Mrs. Wright can be charged with the alleged purchase price.

G. S. SHANKLIN, for Arnold—

1. It is denied that a contract between a guardian and his ward is *per se* fraudulent, but such contracts are valid when made for a fair consideration.

2. The contract between Tapp and Wright, by which Tapp purchased the interest of Mrs. Wright in the slaves, was made, as the proof shows, by the consent and at the solicitation of Mrs. Wright, and without the knowledge of Arnold who subsequently purchased of Tapp, and it is insisted that Mrs. Wright, by her conduct, has deprived herself of any equity she may have had to a settlement out of the slaves. It also appears that Wright has sold the lands he received of Tapp in exchange for the interest in the slaves.

3. It appears from the proof that when the several purchases were made, that the value of the interest of the vendors in the estate of their father was uncertain, some of the slaves being sick, and a portion of the estate in litigation. And it now appears that Arnold paid to one more than his distributive share, and to another a fair price.

W. CLARKE, for Tapp—

1. Tapp, as the proof shows, purchased the interest of Mrs. Wright in her presence, and for what appears to be a full and fair price at that time, and for his own use, not for Arnold, and before the passage of the act of 1846.

2. The right of Wright was a vested right, which he had the power to reduce to possession immediately or to sell, and sale under such state of facts amounts to a devestiture of the right of the wife—See *Jones' adm'r. v. Warren's adm'r.*, 4 *Dana*, 333; *Enlow's ex'or. v. Enlow*, 3 *Marshall*, 229; *Meriwether v. Booker*, 5 *Littell*, 256.

3. The doctrine is not controverted, that when the wife is not suitably provided for the chancellor will interfere to give her a suitable settlement out of her own estate. This case is not like that—here the husband sold the estate and received a fair price, with the consent of the wife, and at her solicitation received the price in land, which they enjoyed by reaping the proceeds for a time, and then selling it at a fair and full consideration. If the wife had, after the sale of the property, desired a separate maintenance, she might have filed her bill and compelled a conveyance of the land to her before it was conveyed to Hunter, who purchased of her husband, but this she failed to do, and now, after having the benefit of the land and the full price of the property, she wishes to turn back upon the original estate and secure the benefit to herself, when it is evident Tapp has conveyed his land to an honest purchaser, for a valuable consideration received by Wright and wife, and when Wright, as

WRIGHT, &c.
vs.
ARNOLD, &c.

appears in the case, is insolvent, all which would be unjust to Tapp.

4. The right of Wright to the slaves was a vested right, and disposed of by the husband, and the right of the wife extinguished—3 *Littel*, 280; 7 *B. Monroe*, 535. The counsel for Tapp believe the decree as to him is right.

September 26.

Judge SIMPSON delivered the opinion of the court.

George Herring died, leaving an estate consisting almost exclusively of slaves. Arnold was appointed his administrator, and also the guardian of his children.

These suits were brought against Arnold by three of the children, for their distributable part of the estate in his hands, as their guardian.

To the suit brought in the name of Elizabeth Wright, the defense relied upon is, that her husband, with her knowledge and consent, sold her interest in the estate in her presence to Tapp, who afterwards sold it to the defendant, Arnold. Her right to bring the suit in her own name, without joining her husband as a co-complainant, is also controverted.

The suit was brought by her to assert her equity to a settlement out of the estate in the defendant's hands. Her right to bring such a suit, in her own name, was settled in the case of *Moore v. Moore*, decided at the December term, 1853.

The question arises, how far her interest in the fund is affected by the transfer made by her husband? The established doctrine seems to be that a transfer by the husband, of the choses in action belonging to the wife, which he has a right to reduce into immediate possession, will deprive her of her right of survivorship, but not of her equity to a settlement.

Has she done any act which precludes her from coming into a court of chancery to assert this equity? We think the fact that she was present when the sale was made, and assented thereto, is clearly proved by the testimony. Now, although she could not, even by

1. A transfer by the husband of the choses in action belonging to the wife, which he has a right to reduce into immediate possession, will deprive her of her right of survivorship, but not of her equity to a settlement.

2. If the wife be present and

joining in the transfer with her husband, divest herself of any legal right which she had to the estate, it does not follow that she cannot by her conduct, place herself in such an attitude as to deprive her of the aid of a court of equity. When she presents herself as a complainant, asking the assistance of the chancellor, she occupied the same attitude that other complainants do. And the doctrine is well settled, that neither infancy nor coverture will constitute any excuse for conduct which in other persons would, as it regards purchasers for a valuable consideration, be deemed unjust and fraudulent. *Davis v. Tingle, &c.*, 8 *B. Monroe*, 543 ; 1 *vol. Story's Equity*, 377. With her interest in the estate in the hands of the administrator, her husband purchased and paid for a tract of land on which they resided for two years. She consented to the sale for the purpose of getting a home. The land has been sold by her husband, and the title has passed from Tapp, so that the parties cannot be placed in the condition they were before the contract was entered into.

Now as the wife assented to the sale by her husband, and was present and did not assert any claim to the property, or controvert the right of her husband to dispose of it, she must be regarded as having induced the purchaser to make the contract, and under such circumstances it would be clearly inequitable to deprive him, at her instance, of the benefit of the purchase. It is not pretended that there was any fraud or imposition in the sale, or even that the price paid was inadequte. Unless then she can be allowed to set up her equity, with the same effect that she could if she had done no act to prejudice her claim, or impair her right to the aid of a court of equity, she is not entitled to any relief; and if she is to be treated as other parties are who seek the assistance of the chancellor, it is evident that she cannot obtain any relief in a court of equity.

The case of *Hord v. Hord*, 5 *B. Monroe*, 81, is relied upon as establishing the doctrine, that the consent of

WRIGHT, &c.
*vs.*
ARNOLD, &c.

make no objection to the sale of her interest in her father's estate by her husband, she cannot afterwards come into a court of equity and demand a settlement out of the estate. *Davis v. Tingle,* 8 *B. Monroe,* 543; 1 *Story's Equity,* 377; *Gilbert v. Carlan, Manuscript Opinion of Summer Term,* 1854.

3. This case is not analogous to the case

of *Hord v. Hord*, 5 *B. Monroe*, 81, which was a case of the mortgage by husband and wife of the reversionary interest of the wife to secure a pre-existing debt of the husband, in which case the chancellor refused to aid the mortgagee to the prejudice of the wife's right to a settlement.

the wife to an assignment of her choses in action by her husband is not obligatory upon her. But that case differs from this in several material particulars. Hord and wife executed a mortgage, on the reversionary interest of the wife in some slaves to which she was entitled after the death of her mother, for the purpose of securing a pre-existing debt of her husband. On a bill filed by the mortgagee to foreclose the mortgage, it was decided that the wife, by uniting with her husband in its execution, had not waived or impaired her equity to a settlement, and that the chancellor, under the circumstances, should not afford any aid to the mortgagee by subjecting the property to sale for his benefit.

Now that it was a reversionary interest which was mortgaged—a chose in action that the husband could not reduce into possession—and consequently could not, by his assignment of it, defeat the wife's right of survivorship. In this case the husband had a right to reduce to possession, the interest which was sold, and by his assignment of it the wife's right of survivorship was completely divested.

Again, in the case referred to, the mortgagee was seeking the aid of a court of equity, which, under the circumstances, was refused; but in this case, the wife comes into court seeking its aid, and occupies a different attitude than she did in the former case.

But the important distinction between the two cases is, that in one the mortgage was executed to secure a pre-existing debt of the husband, and the wife, did not, by her conduct, induce the creditor to part with any of his estate; in the other, the assignment was made in the presence of the wife, and with her sanction, and the purchaser was induced, as a consideration of the assignment thus made, to part with a valuable portion of his estate.

The mortgagee had nothing to rely upon to repel the equity of the wife. The only question was, whether the wife, by merely uniting with her husband in the mortgage, had waived or impaired her equity?

It was a question as to the validity of a contract made by a married woman, and involved no question of fraud or injustice.

But in this case the purchaser relies upon the conduct of the wife, at the time of the assignment, as sufficient to repel the equity which she asserts. She stood by and permitted him to part with his property to her husband, with her assent and sanction. In conjunction with her husband she enjoyed the use of that property for two or three years, and then consented that her husband might sell it. Should a court of equity, under such circumstances, afford her any relief against the assignee of her husband? Would it not be inequitable and unjust to do so? By her conduct she has precluded herself from asserting her equity to a settlement out of this estate, and the court below properly dismissed her petition.

This court decided at the present term, in the case of *Gilbert v. Carlan*, that the plaintiff, although a minor of eighteen years, at the time a slave of which he was the owner was sold by his father, yet, as he was present at the sale, and knew that he was the owner of the slave, and his father had no right to sell it, but did not apprize the purchaser of these facts, had thereby precluded himself from asserting his title against him.

Wherefore, the judgment in this case is affirmed.

With respect to the claim of John A. Herring, we are not able to perceive any ground for setting aside the sale made by him to Arnold. He had been of age some two or three years before he made the sale. Part of the estate was then in litigation, the result of which was uncertain. The exact amount to which he would be entitled upon a settlement of the estate, was unknown to Arnold, the administrator, as well as to him; besides we are inclined to the opinion that the price paid to him amounted to his full share of the estate, and that if the sale were vacated he would not have a right to any more than he has already re-

WRIGHT, &c.
*vs.*
ARNOLD, &c.

4. The fact that a wife stands by and permits her husband to sell her interest in her father's estate, to which he has the immediate right of possession, is sufficient to repel her equity to a right to a settlement out of the estate against the purchaser.

5. An administrator purchased from one of the distributees an interest in the estate, very soon after he arrived of full age, for a consideration grossly inadequate. Held, that the contract was not binding on the distributee, but fraudulent. The chancellor disregards such contracts made with wards and distributees, by guardians and administrators.

6. A *feme covert* may sue in her own name for a settlement. *Moore v. Moore, ante.*

ceived. There is no reason, therefore, for disturbing the transfer made by him to the administrator.

Wherefore, the judgment dismissing this petition is affirmed.

But the sale made by David A. Herring stands upon a different footing altogether. It was made by him, within a very short time after he had attained the age of twenty-one. The consideration was grossly inadequate, and the administrator must have known at that time the amount of the estate to which each distributee was entitled. The defense relied upon, that David had sold his interest in the estate to his brother Isaac, who had brought a suit against the administrator, asserting the same claim that is set up in this suit, and that it was compromised and settled by them, is not sustained by any testimony. It seems to us, therefore, that David is entitled to relief. The transfer he made to Arnold must, under the circumstances, be deemed fraudulent. His interest in the estate, at the time he sold to Arnold, amounted to $700 or upwards, and it was the duty of his guardian to have paid him the money, instead of trafficking with him for a transfer of his interest. Contracts with wards and distributees, made under such circumstances, are deemed fraudulent, and disregarded in a court of equity. He is therefore entitled to a decree for $300, with interest thereon from the 7th October, 1843, until paid, in addition to what he has heretofore been paid by the administrator.

Wherefore, the judgment in his case is reversed, and cause remanded that a judgment may be rendered in conformity with this opinion.